Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7132 | **DATE** | 10/22/2003 |
| **CASE TITLE** | Kopczyk vs. Amphenol | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. This matter is before the Court on defendant's motion for summary judgment. For the reasons stated on the attached memorandum opinion, the Court hereby grants the defendant's motion for summary judgment. All pending dates and motions are hereby stricken as moot. Terminating case.

(11) ■ For further detail see Memorandum Opinion attached to the original minute order.

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 23 2003 date docketed | |
| ✓ | Docketing to mail notices. | | docket deputy initials | 27 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | 03 OCT 22 PM 2:14 | date mailed notice | |
| MW | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KRYSTYNA U. KOPCZYK, )
)
        Plaintiff, )
)
v. ) No. 02 C 7132
)
AMPHENOL CORPORATION, )
)
        Defendant. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the Court on Defendant Amphenol Corporation's ("Amphenol") motion for summary judgment. For the reasons stated below we grant the motion.

DOCKETED
OCT 2 3 2003

### BACKGROUND

Amphenol is a Delaware corporation which operates a Fiber Optics Products Division ("FOP") in or near Lisle, Illinois. Plaintiff Krystyna U. Kopczyk ("Kopczyk") became employed as an "assembler" at the Amphenol FOP location on February 10, 1986. Kopczyk alleges that commencing somewhere in the time frame of 1995 and 1997 and continuing into August of 2001, she was subject to sexual harassment by certain individuals at Amphenol's FOP location. These individuals included Frank Holcombe ("Holcombe"), a FOP production manager; Tom Vujovic ("Vujovic"), a FOP production supervisor; and John Keifer ("Keifer"), a manufacturing process engineer.

On or about August 24, 2001, Kopczyk requested and began a voluntary leave of absence

1

27

from work. On or about September 26, 2001, Kopczyk, through her lawyer, notified Amphenol's Human Resources Department by letter of a claim of sexual harassment against Amphenol. Amphenol immediately began an investigation into Kopczyk's claims. The investigation was conducted by Stuart Abelson ("Abelson"), Amphenol's FOP general manager, and Mr. Scott Ehling ("Ehling") of Amphenol's FOP's Human Resources Department. The investigation found no merit in Kopczyk's claims. Kopczyk's leave of absence ended on October 4, 2002 and her employment was thereafter terminated due to her failure to return to work. Kopczyk brought a hostile work environment claim and alleges she has been sexually harassed in the workplace in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole in a light most favorable to the nonmoving party and draw all reasonable inferences that favor the nonmoving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Title VII forbids any workplace discrimination with respect to "compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A court determines whether an environment is hostile or abusive by looking at all the circumstances. *Gleason v. Mesirow Finacial, Inc.* 118 F.3d 1134, 1143 (7th Cir.1997)(quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993). In its analysis, the court will consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris, 510 U.S. at 23*. An employer may be subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee. *Hardy v. University of Illinois at Chicago*, 328 F.3d 361, 364 (7th Cir. 2003)(*citing Hill v. Am. Gen. Fin., Inc.*, 218 F.3d 639, 642 (7th Cir. 2000).

Amphenol asserts an affirmative defense and argues that summary judgment as a matter of law is appropriate because Amphenol had in place an anti-harassment policy and Kopczyk

3

failed to promptly take advantage of it. Kopczyk contends that summary judgment is not warranted because she was not aware of the existence of Amphenol's anti-harassment policy until after she began her leave of absence. The Supreme Court has distinguished between hostile work environment cases in which the supervisor takes a tangible employment action against the subordinate and those in which the supervisor does not. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 760-65 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). In the absence of a tangible employment action, a defending employer may raise an affirmative defense to show (1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff failed to take advantage of any preventive or corrective opportunities provided by her employer or to otherwise avoid harm. *See Molnar v. Booth*, 229F.3d 593, 600 (7th Cir. 2000)(citing *Ellerth*, 524 U.S. at 765).

## I. Tangible Employment Action

A tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *See Hardy*, 328 F.3d at 364(citing *Ellerth*, 524 U.S. at 761); *see also Molnar*, 229 F.3d at 600(citing *Ellerth*, 524 U.S. at 761). A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. *See Ribano v. United Airlines, Inc.*, 200 F.3d 507, 511 (7th Cir. 1999)(citing *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir 1993).

Kopczyk argues that in 2001 an Amphenol supervisor took tangible employment action against her by asking her where she was going as she was headed to the bathroom. Kopczyk maintains that the supervisor then asked her why she was going to the bathroom and proceeded to

4

point at his watch. Kopczyk further states that this same supervisor would at times whistle at her to get her attention and sometimes point at her to return to her desk. Standing alone, or together, these allegations to do not meet the test set forth in *Ellerth*. 524 U.S. at 761; *see also Ribano*, 200 F.3d at 511; *Crady*, 993 F.2d at 136. Although Kopczyk was terminated from her employment with Amphenol, she admits this was due to her failure to return to work upon conclusion of a leave of absence. (Pl.'s Resp. to Def.'s Rule 56.1: No. 11) Thus, Kopczyk was not subject to a materially adverse change in her employment. Therefore, we find that no reasonable jury could find that Kopczyk suffered a tangible employment action by Amphenol.

## II. *Ellerth/Faragher* Affirmative Defense

In the absence of a tangible employment action, Amphenol is entitled to an affirmative defense of liability if it can show (1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff failed to take advantage of any preventive or corrective opportunities provided by her employer or to otherwise avoid harm. *Ellerth*, U.S. 524 at 765; *Faragher*, 524 U.S. at 807.

### First Prong

Kopczyk contends that Amphenol cannot satisfy the first prong of the Ellerth/Faragher defense on a number of issues. Kopczyk first challenges the reasonableness of Amphenol's sexual harassment policy and whether it was sufficiently disseminated. An employer may provide a proven, effective mechanism for reporting and resolving complaints of sexual harassment, available to the employee without undue risk or expense. *Faragher*, 524 U.S. at 806. The Amphenol FOP one page Anti-Harassment / Non-Discrimination Policy ("Policy") provides it's employees with a detailed and instructive mechanism for reporting and resolving complaints of sexual harassment with its Human Resources Department. (Def.'s Ex. 2) Amphenol maintains that a copy this Policy was posted on it's employee lunchroom bulletin

5

board and on its general information board. Amphenol supports this contention through an affidavit of Abelson, Amphenol's FOP general manager, who swears that the Policy has been in those locations since he began working there in 1999. (Def.'s Rule 56.1: D; Abelson Dep. p. 17, 78) In addition, Joan Pegues ("Pegues"), an Amphenol employee and a co-worker of Kopczyk, stated in her March, 11, 2003 deposition that a sexual harassment policy has been posted on a bulletin board at Amphenol for the last twelve or thirteen years. (Pegues Dep. p. 13-15; Def.'s Ex. 9)

Kopczyk argues that she was not aware of the Policy until after Amphenol began it's investigation. Kopczyk further denies that the Policy had been posted on a bulletin board at the employee lunchroom at Amphenol. However, in her deposition Kopczyk admits that the Policy could have been posted on the bulletin board, but that she didn't see it. (Kopczyk Dep. p. 73 )

Kopczyk argues that Amphenol failed to have any training on it's sexual harassment policy until after Kopczyk began her leave of absence. The evidence reflects that while Kopczyk was on leave, Amphenol conducted an employee sensitivity training for the prevention of sexual harassment with all of it's employees. (Pegues Dep. p. 17-18; Abelson Dep. p.12) Amphenol conducting sensitivity training does not diminish the fact that the Policy was already in place and posted in the Amphenol employee lunchroom.

Based upon the affidavits, depositions, and Rule 56.1 facts produced by both parties, the evidence supports the conclusion that the Policy existed and was posted since at least 1991 on a bulletin board in an area open to everyone at Amphenol - the employee lunchroom. Therefore, we find that no reasonable jury could find that Amphenol's Policy was unreasonable or not sufficiently disseminated to its employees.

Kopczyk next challenges the reasonableness of Amphenol's response, investigation, and remedy imposed as a result of her sexual harassment claims. Kopczyk asserts that Amphenol's

6

response to her sexual harassment claims was not reasonable because Amphenol had constructive knowledge of the alleged harassment before her lawyer sent the claim letter to Amphenol on September 26, 2001.

Kopczyk maintains that she reported some of the alleged incidents of harassment to Pegues as early as 1995. Pegues is a co-employee of Kopczyk at Amphenol and holds a title referred to as a "group leader" or a "lead" person. Kopczyk states that several of the incidents of harassment she allegedly endured were witnessed by Pegues. According to Pegues, a group leader's responsibility is to assist people with their work, provide work to them, and prepare jobs for them. (Pegues Dep. p. 8) Kopczyk admits that a lead person is not the same as a supervisor. (Kopczyk Dep. p. 65)

The Policy in place instructs Amphenol employees experiencing harassment to report such incidents to Human Resources immediately. (Def.'s Ex. 2) Kopczyk maintains that she was afraid to go to Human Resources because she feared she would lose her job. (Kopczyk Dep. p. 66-67) However, an employee's apprehension to report the harassment does not eliminate the requirement that the employee report the harassment. *Hill v. Am. Gen. Fin., Inc.*, 218 F.3d 639, 644 (7th Cir. 2000). Kopczyk incorrectly assumed that by confiding her allegations to Pegues she was somehow relieved of her duty to report these allegations to Human Resources. (Kopczyk Dep. p. 66) Pegues, on two separate occasions, told Kopczyk that if something was bothering her she should report the allegations to Human Resources because it was the proper step to take. (Pegues Dep. p. 26, 32; Def.'s Ex. 9) Furthermore, Kopczyk states that she wasn't sure if she wanted Pegues to report the incidents of harassment and admits that she did not tell Pegues to report them. (Kopczyk Dep. p. 69-70)

The other witnessed incidents Kopczyk refers to in her response do not support a finding that the harassment Kopczyk alleges was well known throughout the FOP Facility. (Pl.'s Rule

7

56.1: 14, 15, 21, 22) Kopczyk's lawyer sent the claim letter to Amphenol on September 26, 2001 and on October 2, 2001 representatives from Amphenol were meeting with Kopczyk to conduct a formal investigation. (Def.'s Ex. 5-8) The record reflects that Kopczyk did not report the alleged incidents immediately. Instead she waited until years later, after she began a leave of absence, to report the alleged conduct. The record also reflects that when Amphenol did become aware of her allegations on September 26, 2001, they immediately took steps to conduct an investigation. Therefore, we find that no reasonable jury could find that Amphenol did not promptly address Kopczyk's allegations.

Kopczyk also challenges the sufficiency of Amphenol's investigation and remedy. However, Amphenol's investigation in response to Kopczyk's claims was well documented and conducted professionally. Abelson headed the investigation and was assisted by Scott Ehling of the Human Resources Department. (Abelson Dep. p. 21) After initially interviewing Kopczyk, Amphenol conducted an interview and prepared three separate summary reports on the individuals accused of the harassment - Holcombe, Vujovic, and Keifer. (Def.'s Ex. 5-8) In addition, Abelson and Ehling interviewed and prepared a summary report of Kopczyk's co-employee, Joan Pegues. (Def.'s Ex. 9)

The law does not require success, but only requires that an employer act reasonably to prevent sexual harassment. *See Hardy v. University of Illinois at Chicago*, 328 F.3d 361, 365 (7th Cir. 2003)(citing *Shaw v. Auto Zone, Inc.* 180 F.3d 806, 812 (7th Cir. 1999). Although, it is apparent that Amphenol issued it's findings to Kopczyk before it had interviewed Keifer, we find that Amphenol could have reasonably concluded - as does this court - that the Kiefer summary would not have warranted a material change in the result of the Kopczyk investigation. (Def.'s Ex. 8; Pl.'s Ex. 6) Furthermore, Kopczyk's attempt to discredit the record found in the Amphenol summaries in comparison to Holcombe's subsequent deposition testimony and

8

Ehling's original notes is also without merit. The summaries are just that - a summary of the interview. A review of Holcombe's deposition and Ehling's original notes reveal that the summaries are not unreasonable and do not misrepresent or delete any information material to the investigation. (Compare: Pl's Ex. 5 p.0490.1 & Def.'s Ex. 5; Holcombe Dep. p. 18 -33 & Def. Ex. 6)

The result of Amphenol's investigation reveals that Kopczyk's allegations of sexual harassment were denied by her fellow employees. (Pl. Ex. 6) The investigation did reveal that on some occasions a fellow employee or supervisor would put his hand on her shoulder to get her attention because she was listening to music with headphones on her ears and on one occasion a manufacturing process engineer put his hand on Kopczyk's shoulder when he noticed she was visibly upset and told her, "everything will be okay." (Def.'s Ex. 6,7,8, Pl.'s Ex. 6) Amphenol notified Kopczyk of the result of the investigation in a letter dated October 17, 2001. Although the investigation did not find any wrongdoing on the part of any of the employees, supervisors, or management personnel at Amphenol, the company went a step further by conducting an employee sensitivity training seminar for the prevention of sexual harassment with all of it's employees. (Pegues Dep. p. 17-18; Abelson Dep. p. 12) Furthermore, even though Amphenol did not find any sexual harassment on the part of Holcombe (a FOP production manager); Vujovic (a FOP production supervisor); and Keifer, (a manufacturing process engineer), the company nonetheless issued warnings to all three so as to ensure that no incidents such as the ones alleged occur in the work place environment. (Pl. Ex. 6) Thus, the record reflects that Amphenol had in place an investigation process, did act promptly, found no sexual harassment had taken place, but at the same took remedial action to educate its workforce and issued warnings to its supervisors in its effort to preserve a sexual harassment free work environment.

Accordingly, we find that no reasonable jury could find that Amphenol's investigation or

remedy were not reasonable.

Therefore, we find that Amphenol has satisfied the first prong of the *Ellerth/Faragher* affirmative defense by proving that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior in it's work environment. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 760-65 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

**Second Prong**

Kopczyk contends that Amphenol cannot satisfy the second prong of the *Ellerth/Faragher* defense because she was not aware that a Policy existed until after she began her leave of absence. Amphenol argues that Kopczyk delayed in reporting her claims to Human Resources and unreasonably failed to take advantage of the preventative and corrective opportunities provided by Amphenol.

To satisfy the second prong of the *Ellerth/Faragher* affirmative defense, Amphenol must show that Kopczyk failed to take advantage of any preventive or corrective opportunities provided by Amphenol or to otherwise avoid harm. *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. This Court has already found that the Policy has been posted at Amphenol since at least 1991. Kopczyk failed to notify Amphenol until September 26, 2001, despite the fact that the alleged harassment had been ongoing for years. (Pl.'s Rule 56.1: 36, 37) Moreover, Kopczyk does not present a genuine material issue that she ever attempted to report the alleged harassment to Human Resources at any time before September 26, 2001. Her delay in reporting the harassment is unreasonable.

Kopczyk argues that even if she wished to report the sexual harassment to the Human Resources department in 2001, she could not do so because the Human Resources Department Personnel Position was temporarily vacant during a brief period of that year. Kopczyk's

argument is without merit for the following reasons: (1) the harassment she alleges dates back to years before the brief vacancy in the Human Resources Department Personnel Position in 2001; (2) Kopczyk contradicts herself because she has already admitted that her delay in reporting the harassment was based on a fear she may lose her job and not on a contention that she would have if the Human Resources position was not vacant for a brief period; (3) Kopczyk fails to present evidence indicating that she ever attempted to report her claims to the Human Resources Department or to anyone in management at any time prior to September 26, 2001; and (4) It is undisputed that Kopczyk's visit to the Human Resources Department on August 24, 2001 was to make arrangements for her leave of absence - Yet, at that same visit, while she was meeting with a representative from Human Resources, she failed to mention any of the alleged harassment she was experiencing. (Compl. p. 2; Kopczyk Dep. p. 66-67; Def.'s Ex. 9; Pl.'s Rule 56.1: 36-37)

As we have discussed above in the first prong analysis, Kopczyk's confiding in Pegues, a non-supervisor, does not amount to taking reasonable steps to notify Amphenol. In addition, Kopczyk failed to take advantage of any of the preventive or corrective opportunities provided by Amphenol's Policy and failed to report her allegations through the proper channels.. Therefore we find that no reasonable jury could find that Amphenol did not satisfy the second prong of the *Ellerth/Faragher* affirmative defense. *See Ellerth*, 524 U.S. 765 (stating that an unreasonable failure to use any complaint procedure provided by the employer "will normally suffice to satisfy the employer's burden under the second element of the defense"). Amphenol has shown that there is no genuine issue as to any material fact and as a matter of law is entitled to judgment under the Ellerth/Faragher affirmative defense.

## CONCLUSION

Therefore, based on the foregoing analysis, summary judgment will be granted to Amphenol on Kopczyk's sexual harassment claim.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: OCT. 22, 2003